```
              IN THE UNITED STATES DISTRICT COURT
                    DISTRICT OF MINNESOTA
                 Criminal No. 11-280 (MJD/JSM)
```

UNITED STATES OF AMERICA,          )
                                   )
                 Plaintiff,        )
                                   ) GOVERNMENT'S RESPONSE
          v.                       ) TO DEFENDANTS' PRE-TRIAL
                                   ) MOTIONS
(5)  JAVIER HERNANDEZ-CORIA,       )
(6)  SUSANA BARRAGAN-SANCHEZ,      )
(7)  ADELAIDA BARRAGAN-SANCHEZ,    )
(10) ROBERT ALAN DELFORIN,         )
(14) HAROLD JAMES HURLEY, and      )
(16) ERIKA ROMERO MONTENEGRO,      )
                                   )
                 Defendants.       )

The United States Attorney, B. Todd Jones, by and through the undersigned Assistant United States Attorney, Steven L. Schleicher, hereby submits the government's response to defendants' pre-trial motions.

As a general response, the Government notes that many of the Pretrial Motions are not pled with sufficient specificity. For several of the motions, Defendants fail to assert any facts in support of the various motions, and instead, Defendants' Motions contain mere boilerplate. The Government should not be required to guess the bases for Defendants' boilerplate Motions. Clearly a motion should be "sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that a substantial claim is presented. . . . A court need not act upon general or conclusory assertions. . . .'" United States v. Cooper, 203 F.3d 1279, 1284 (11th Cir. 2000) (quoting United States v. Richardson, 764 F.2d 1514, 1527 (11th Cir. 1985)); see also United States v.

<u>Mims</u>, 812 F.2d 1068, 1073-74 (8th Cir. 1987) (holding that evidentiary hearings are not required where the moving papers are not sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that there are contested issues of fact); <u>United States v. Losing</u>, 539 F.2d 1174, 1177-78 (8th Cir. 1976). Accordingly, the Government submits that the Defendants should particularize their Motions before the Government should be required to respond. At a minimum, the Government may not be prepared to have a hearing on all of Defendants' Motions. Notwithstanding the deficiencies of Defendants' motions, each of them is addressed below.

The government reserves the right to present additional authority to the Court at the time of hearing on this matter as well as in further memoranda to be filed at the conclusion of the suppression hearing on this matter.

**1.   <u>Motion for Discovery</u>**
      **[189, 214, 292, 312, 316]**

Defendants have requested discovery. The government does not object to defendants' various requests to the extent such disclosures are required by the Rules of Criminal Procedure. The government has made all disclosures required under Fed. R. Crim. Pro. 16. The government has provided over 1000 pages of documents to the defendants, over 60 CDs/DVDs and has made physical evidence available for inspection. This case involved a wiretap investigation and the government has provided each defendant a copy

2

of all of the applications, affidavits and orders issued authorizing the wiretap as well as a copy of the communications intercepted pursuant to the orders.  The United States has provided each defendant a copy of their respective statements and has provided all of the search warrant applications and orders issued in connection with this case.  To the extent that any defendant has made a motion for transcripts of the recordings, the United States has provided some transcripts to the defendants.  However, these transcripts are not required to be provided because the entire recording of the conversation was disclosed.  Any transcripts that have been provided should be considered "rough" transcripts and the final version would not be available until shortly before trial.

The government objects to requests for disclosures that are not required by the rules or that request immediate disclosure of information not required to be immediately disclosed.  This includes but is not limited to Jenks Act material, 404(b) information, grand jury information, expert opinions, the identity of unnamed co-conspirators and other such requests.  The government will comply with its discovery obligations in the time and manner required by the rules.

**2.  Motion for Immediate Disclosure of 404(b) Information [191, 213, 300, 307, 343]**

Defendants seek immediate disclosure of evidence the United States intends to offer of any "bad act" or other similar conduct to aid in a determination of whether to enter a guilty plea or

3

proceed to trial in an orderly fashion.  Under Rule 404(b), "no specific form of notice is required."  Fed. R. Evid. 404 advisory committee's note, 1991 Amendments.  Rule 404(b) only requires the government to provide defendant with "reasonable notice in advance of trial" of the "general nature of any such evidence" intended to be introduced.  The United States is only required to provide the defense with "generalized notice" which "apprise[s] the defense of the general nature of the evidence of extrinsic acts."  <u>Id</u>.  Thus, the government opposes the motion to the extent the defendants seek immediate disclosure of this evidence.

The government understands its duty to comply with Rule 404(b) in advance of trial, and it will comply with the notice requirements of the rule.  The United States proposes, as it has in many other cases, to provide notice of its intention to offer Rule 404(b) evidence three (3) days prior to trial or upon learning of the existence of the evidence, whichever occurs later in time.

## 3.  **Motion for Disclosure of Confidential Informants [297, 309 ]**

No confidential informants will testify as witnesses in this case.  Defendants request this Court order the disclosure of the identity of the informant(s) used in this case and to make such person available for interview.  The government is not required to disclose the identity of the informant, even if such informant was used to obtain an application for a wiretap or a search warrant, where the informant will not be a witness at trial, was not present

4

for any of the intercepted calls, transactions, or during the execution of the warrant, and was not involved in the instant charges.

In making a request for disclosure, the defendant bears the burden of demonstrating a need for disclosure. United States v. Moore, 129 F.3d 989, 992 (8th Cir. 1997)(citing Rovario v. United States, 353 U.S. 53, 59, (1957)). Here, defendants do not state with specificity the basis for disclosure. Merely stating that an informant has testimony that is material and defendant's desire to determine the motivation for informing are not sufficient to require disclosure. See, United States v. Bourbon, 819 F.2d 856 (8th Cir. 1987).

In weighing the balancing test set forth in Rovario, which weighs the public interest in protecting the flow of information against the individual's right to prepare his defense, the particular circumstances of each case must be considered. As these circumstances are considered, the Court should look to the crime charged, possible defenses, and the potential significance of the informant's testimony. Without more from defendants, specifically showing why this witness is material to the determination of the case and potentially helpful to in a defense, disclosure should not be required, especially in light of the government's concern for the informant's safety. As well, the informant(s) were not present during any intercepted calls, for any of the transactions, or the

execution of the search warrant.  Informant(s) did not participate in the activity relative to the instant charges, and will not be called as a witnesses.  <u>See,</u> <u>United States v. Hollis</u>, 245 F.3d 671 (8th Cir. 2001).

**4.   Disclosure of Favorable Evidence, including Impeachment/ _Giglio_ Information and Promises to Witnesses**
**[190, 217, 216, 299, 227, 231, 318, 326]**

The United States is well aware of and has and will continue to comply with its obligations pursuant to <u>Brady v. Maryland</u>, <u>Giglio v. United States</u>, and their progeny.  The government will provide this information to defendants no later than the time set for the disclosure of Jencks Statements.

**5.   Disclosure of Statements/Post-Conspiracy Statements of Co-Defendants**
**[219, 301, 310]**

Defendants move this court to order the government to disclosure post-conspiracy statements of co-defendants.  If such statements fall within the purview of <u>Brady v. Maryland</u>, defendants will be provided notice of those statements so that further review can be conducted by defendants.  If such statements are provided by co-defendants who will testify as witnesses at trial, the United States will provide this information no later than the time set for the disclosure of Jencks Statements.  To the extent that defendants' motions request notice of statements of co-defendants that the United States intends to introduce at trial, the United States hereby notifies the defendants that it may introduce any of the conversations intercepted over the Court-authorized wiretap, as

well as recordings or statements about conversations taking place between co-defendants during the course of the conspiracy and after their arrest.  To the extent that defendants seek disclosure to assist in the identification of <u>Bruton</u> issues as a result of post-arrest confessions, the United States agrees to identify and provide such statements as may raise <u>Bruton</u> issues to the defendants.

**6.**   <u>**Motion for Disclosure of Jencks Statements**</u>
   <u>**[192, 218, 228, 332]**</u>

Defendants request this Court to order the government to provide *Jencks* information immediately.  Defendant's motion for early production of Jencks Act material should be denied.  Rule 16(a)(2) specifically excludes statements made by government witnesses from pretrial discovery, except as provided in the Jencks Act.  The Jencks Act specifically states in relevant part:

> In any criminal prosecution brought by the United States no statement or report  in  the possession of the United States  which was  made  by  a  Government witness or prospective Government witness (other than the defendant) shall  be  the  subject  of  subpoena,  discovery,  or inspection until said witness had testified on direct examination in the trial of the case.

18 U.S.C. § 3500(a).  This language has been interpreted according to its terms.  Although the United States <u>may</u> disclose such information prior to trial testimony by a witness, the United States cannot properly be required to do so.  <u>See</u>, <u>e.g.</u>, <u>In re United States</u>, 834 F.2d 283, 285 (2d Cir. 1987); <u>United States v. White</u>, 750 F.2d 726, 728-29 (8th Cir. 1984).  Further, the

established rule in this Circuit is that, ordinarily, the United States need not disclose Jencks Act material prior to the direct examination of the witness to whom the material pertains. United State v. Green, 151 F.3d 1111, 1115 (8th Cir.1998); United States v. Wilson, 102 F.2d 968, 971 (8th Cir. 1996); United States v. Douglas, 964 F.2d 738, 741 (8th Cir.1992); United States v. White, 750 F.2d at 729.

Although not required to do so, the United States agrees to provide Jencks Act material to the defendant three (3) days prior to trial, as is the custom in this District.

## 7.  **Disclosure of Grand Jury Transcripts** **[331]**

Defendant moved this Court for an order requiring disclosure of grand jury transcripts for those witnesses who will testify at the motions hearing in this matter. To the extent that the United States will present testimony at the motions hearing and such witnesses have provided grand jury testimony material to the witness' testimony at the hearing, the United States will disclose such testimony to defendant to the extent required by Federal rule of Criminal Procedure 26.2.

## 8.  **Motion to Retain Rough Notes** **[193, 215, 334, 341]**

Without conceding that any such notes exist or are subject to discovery, the government agrees to retain all rough notes.

8

9.   **Motion to Suppress Electronic Surveillance Evidence**
     **[196, 220, 296, 336, 338]**

Law enforcement utilized court-authorized wiretap orders during the investigation of this case. These orders were issued by a United States District Court Judge after a careful review of a detailed affidavit in support of the applications for intercept authorization. Defendants move this Court for an order suppressing the electronic surveillance evidence based on several points.

The federal wiretap statute (Title 18 U.S.C. §§ 2510-2520), generally prohibits the government from conducting wiretap investigations without first obtaining an approval order from a judicial officer. In order to obtain such authorization the government is required to present the court with facts sufficient to establish probable cause that a wiretap will produce information concerning the commission of a particular offense by an identified individual. See 18 U.S.C. § 2518(3)(a),(b). Once the district court determines that probable cause exists, it may issue an order authorizing the wiretap. The wiretap order must specify: (a) the identity of the person, if known, whose communications will be intercepted; (b) the location of the facilities where authority to intercept communications is permitted; (c) a description of the types of communications that are expected to be intercepted and the offense to which they relate; (d) the name of the person authorizing the application and the name of the government agency authorized to intercept the communications; and (e) the period of

9

time for which the wiretap is authorized. See 18 U.S.C. § 2518(4)(a)-(e).

An application requesting a wiretap order must include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c). The wiretap statute also requires that every order contain a provision requiring the government to minimize the interception of communications unrelated to the illegal activity specified in the application. See 18 U.S.C. § 2518(5).

Defendants have challenged the necessity of the use of wiretaps in this case. The Eighth Circuit has held that the necessity requirement of 18 U.S.C. § 2518 is meant only to ensure that wiretaps "are not routinely employed as the initial step in an investigation." United States v. Macklin, 902 F.2d 1320, 1326 (8th Cir. 1990), cert. denied, 498 U.S. 1031 (1991). See also United States v. Shaw, 94 F.3d 438, 441 (8th Cir. 1996); United States v. Daly, 535 F.2d 434, 438 (8th Cir. 1976). Law enforcement officers are not required to exhaust all possible investigative techniques before applying for a wiretap. Macklin, 902 F.2d at 1326. The government is simply not required to use a wiretap only as a last resort. Id. at 1327.

Even if this Court finds that the necessity requirement was not met, the "good faith exception" adopted in United States v.

10

_Leon_, 468 U.S. 897 (1984) requires that defendant's suppression motions be denied.  _See_ _United States v. Moore_, 41 F.3d 370, 376 (8th Cir. 1994) (_Leon_ good faith exception applies to wiretap affidavits).

The government will submit evidence to the Court at the time of hearing relative to the steps taken prior to seeking the application for interception, administrative steps taken to obtain the application, steps taken in monitoring the interceptions, and steps taken to seal the matter.  The government will submit the affidavits submitted in support of the two wiretap orders for a four-corners review.  While one of the defendant's references _Franks v. Delaware_, (See Doc. 336), that motion fails to particularize any specific material misrepresentations justifying a _Franks_ hearing.  The motion alleges misrepresentations were made concerning persons known to be committing offenses and previous applications, but does not specify what these misrepresentations allegedly were.  Accordingly, a _Franks_ hearing is not warranted and the Court should not allow cross-examination of the agent beyond what is contained in the affidavit.  The government requests leave of the Court to file full memorandum including authority at the close of the evidentiary hearing on this matter.

## 10.  __Motion to Join All Defendants Motions__
   __[230]__

Defendant has requested that to be allowed to join in the motions of all other defendants.  The government objects to this request.  Defendant has not identified which motions defendant

wishes to join, the basis for such joinder, nor the position or reason why they should be joined to the motions.  The government will not be able to address the issues and the Court should not require the government to address motions unless specificity is provided.

11. **Motion for Disclosure of Experts**

   **[315, 344]**

Defendants have requested the names and other relevant information for experts the government intends to present during the course of trial.

With respect to expert witness disclosure, at this time, the government has not determined which expert witnesses it will call at trial.  The government expects to call experts to establish that purported controlled substances in fact were controlled substances absent a stipulation.  In addition, the government likely will call an expert to testify about illegal controlled substance conspiracies.  The government recognizes its obligations under Fed. R. Crim. Pro. 16(a)(1)(G) and will provide both defendants with reasonable notice prior to trial, but no later than three weeks before trial.

12. **Motion for Sentencing Guideline Information**
   **[229]**

Defendant has requested the court to order the government to provide all material relevant to the calculation of the defendant's sentence pursuant to the United States Sentencing Guidelines.  This

motion is premature and should be denied.  The defendant has been provided with appropriate discovery in this case allowing for as accurate an assessment of the likely advisory guidelines range.

## 13.  **Motion to Sever**
[302, 335]

The United States hereby makes its response to defendant's motion to sever.  Rule 8 of the Federal Rules of Criminal Procedure allows for joinder of Defendants and Counts in criminal cases.

Rule 8(a) provides for joinder of offenses if the offenses "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan."   Rule 8(b) provides for joinder of defendants when "they are alleged to have participated in the same act or transaction, or in the same series or acts or transactions....  All defendants need not be charged in each count."

In this case, the Defendants are charged in a overarching conspiracy to distribute methamphetamine and marijuana.  The events in this case take place over the course of several months with much of the evidence overlapping as to multiple defendants.  Thus, under Rule 8, the Defendants are property joined.

Furthermore, to the extent that a trial would raise issues pursuant to Bruton v. United States, 391 U.S. 123 (1968) or joinder would otherwise be improperly prejudicial, at this time such issues are somewhat premature as it is unclear what evidence will be

13

admitted at trial, and which, if any co-defendant post-conspiracy statements will be used in the government's case-in-chief. The United States has no objection to Defendants raising this issue again at time of trial.

14. **Motion to Suppress Statements**
    **[195]**

The United States hereby makes its response to various Defendants' motions to suppress statements. Except as otherwise provided below, each defendant has failed to identify with any specificity what within the statement might result in suppression. Without such identification, the United States is not in a position to respond in a substantive manner. Accordingly, these motions should be denied.

Adelaida Barragan-Sanchez.   Defendant Adelaida Barragan-Sanchez moved to suppress her post-arrest statement taken September 7, 2011.  (See: Doc. 195).  However, after giving some basic biographical information, defendant Adelaida Barragan-Sanchez indicated that she was unable to give a statement due to her concern about the health of her children and then subsequently invoked her right to counsel. The United States does not intend to produce witnesses with respect to this motion, as all that was provided by this defendant was her name and address.  Routine biographical data is exempted from Miranda 's coverage. United States v. Brown, 101 F.3d 1272, 1274 (8th Cir.1996); Pennsylvania v. Muniz, 496 U.S. 582, 601, 110 S.Ct. 2638, 110 L.Ed.2d 528

(1990). "A request for routine information necessary for basic identification purposes is not interrogation under Miranda, even if the information turns out to be incriminating." <u>United States v. McLaughlin</u>, 777 F.2d 388, 391-92 (8th Cir.1985).   This motion should be denied.

<u>Erika Romero Montenegro</u>.   Defendant Erika Romero Montenegro has moved to suppress her statement to law enforcement upon her arrest On September 15, 2011, in Oakland, California. (See: Doc. 221).  Defendant Montenegro contends in her moving papers that the statement was taken in violation of her Fifth and Sixth Amendment rights and has orally supplemented the motion to the United States, indicating that the statement was coerced.   Defendant's motion to suppress should be denied.   The United States will offer testimony by DEA Special Agent Jay Anderson that the defendant was read a Miranda warning in Spanish by Oakland School Police Officer Antonio Fregoso, who will also testify at the hearing.   Defendant, who was not handcuffed, indicated that she understood her rights and agreed to speak with the officers.   Defendant proceeded to give a statement.   The entire duration of the interview, including the Miranda warning, was approximately 1 hour and 10 minutes.

The United States anticipates that the testimony will show that defendant Montenegro was properly warned pursuant to <u>Miranda v. Arizona</u>, that she had the right to remain silent, that any statement she made could be used against her, and that she had the

right to the presence of an attorney, either retained or appointed." 384 U.S. 436, 444 (1966).  The testimony will also show that the defendant waived her Miranda rights, and that the waiver was knowing, voluntary, and intelligent.  See Moran v. Burbine, 475 U.S. 412, 421 (1986).  This is determined by a two-prong test.  See, e.g., Edwards v. Arizona, 451 U.S. 477, 482 (1981).  First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. See Holman v. Kemna, 212 F.3d 413, 420 (8th Cir. 2000).  Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.  Id.  The defendant's alleged bases for suppression will be shown to be without factual or legal support.

Robert Delflorin.  Defendant Robert Delflorin has moved to suppress statements, however, he did not provide a post-arrest statement to law enforcement.  Accordingly defendant Delflorin's motion to suppress statements should be denied as moot. (See: Doc. 293).

Harold Hurley. Defendant Hurley has moved to suppress the statement he made to law enforcement on August 3, 2011. (See: Doc. 339).  Defendant Hurley challenges the admissibility of the statement base upon the Fifth and Sixth Amendments, claims that the

statements were involuntary and further asserts that the statement was the product of an illegal arrest.

The testimony will establish that Hurley was stopped by a St. Paul police officer on August 2, 2011 and was found to be in possession of approximately 4 ounces of methamphetamine. The basis of this stop is addressed in the government's response to defendant Hurley's motion to suppress evidence obtained as a result of search and seizure. After the traffic stop, defendant Hurley was booked into the Ramsey County Law Enforcement Center. On August 3, 2011, St. Paul Police Officer Robert Kosloske interviewed Hurley. Officer Kosloske is expected to testify that he advised Hurley of his Miranda rights, which were provided on a written form. Hurley indicated that he understood his rights and agreed to speak with Officer Kosloske. Hurley confessed that he obtained the methamphetamine from another individual and intended to sell it. Hurley admitted that the drugs were fronted to him and that he owed approximately $6000.00 to his supplier. Hurley declined to provide the names of the other people involved to Officer Kosloske.

The evidence will show that defendant Hurley knowingly, intelligently and voluntarily provided a statement to law enforcement following a Miranda warning. There is no indication that this statement was the product of coercion or improper police conduct. The defendant's motion to suppress this statement should be denied.

15.  **Motion to Suppress Evidence Obtained By Search and Seizure**
     **[340, 222, 194}**

The United States hereby makes its response to various Defendants' motions to suppress evidence gathered pursuant to searches and seizures.  As noted previously, most of these motions lack any specificity or articulate a basis for relief. Accordingly, it is nearly impossible for the government to respond. Assuming that the Defendants identify particular issues with respect to each warrant, the United States reserves the right to file supplemental briefing in order to address these issues that have not been sufficiently raised.

Harold Hurley.  Defendant Hurley contends that the stop of his automobile on July 25, 2011 and again on August 2, 2011 violated the 4th Amendment.  However, these traffic stops were valid.

Probable cause is not required for an automobile stop.  Rather, an officer may conduct a traffic stop of a motor vehicle if the stop is supported by a reasonable and articulable suspicion of criminal activity.  United States v. Jones, 269 F.3d 919, 924 (8th Cir. 2001)(citing Delaware v. Prouse, 440 U.S. 648, 663, 99 S. Ct. 1391, 59 L.Ed. 2d 660 (1979)); Terry v. Ohio, 392 U.S. 1, 20-22, 88 S. Ct. 1868, 1879-80, 20 L.Ed.2d 889 (1968).  A reasonable belief must be more than an "inchoate and unparticularized suspicion or 'hunch'."  Terry v. Ohio at 392 U.S. 20-22.  The officer must be able to "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably

18

warrant that intrusion." Id. at 21, 88 S. Ct. at 1880.  The level of suspicion required to justify a stop is, however, "considerably less than proof of wrongdoing by a preponderance of the evidence" and must be evaluated under "the totality of the circumstances." United States v. Sokolov, 490 U.S. 1, 7-8, 109 S. Ct. 1581, 1585-86, 104 L.Ed.2d 1 (1989). An officer may rely on information provided by other officers and all of the information known to the team of officers involved in the investigation to provide justification for a stop. United States v. O'Connell, 841 F.2d 1408, 1418-19 (8th Cir.1988), cert. denied, 488 U.S. 1011, 109 S. Ct. 799, 102 L.Ed.2d 790 (1989).  A traffic stop is a "seizure" within the meaning of the Fourth Amendment and governed by the principals of Terry v. Ohio, 492 U.S. 1, 88 S. Ct. 1868, 20 L.Ed. 2d 889 (1968).  However, for the purposes of constitutional analysis, a traffic stop is characterized as an investigative detention, rather than a custodial arrest.  Jones, at 924, citing Berkemer v. McCarty, 468 U.S. 420, 439, 104 S. Ct. 3138, 82 L.Ed. 2d 317 (1984).

The government will present evidence that both automobile stops were based on the collective knowledge of the defendant's criminal activity by the officers investigating the case.  This knowledge established a reasonable suspicion of criminal activity and probable cause to search and arrest.  Wire interceptions and surveillance indicated that Hurley had participated in a drug

transaction with another individual prior to the July 25 stop.  No evidence was seized as a result of that stop, however, Hurley was identified by the officer involved.  Similarly, wire interceptions coupled with surveillance indicated that Hurley had participated in another drug transaction on August 2.  An officer on surveillance observed Hurley engage in what appeared to be a hand-to-hand transaction with a known drug dealer prior to the stop.  This formed the reasonable suspicion to believe that the defendant was engaged in illegal drug activity and the probable cause to believe that there would be contraband in his vehicle when it was stopped.  Officer Todd Bjorkman, the St. Paul officer performing the August 2 stop, is expected to testify that he was told by another officer about the suspected transaction in which Hurley was involved and was directed to stop the vehicle.  Officer Bjorkman saw Hurley's vehicle traveling faster than the other cars driving on Interstate 94.  Officer Bjorkman also saw Hurley's vehicle exit I-94 onto Maryland avenue and eventually run a red light at Maryland and Jackson.  This alone would have formed sufficient basis to stop the vehicle.  Once stopped, Hurley was unable to provide proof of insurance.  Based on the information supplied by the other officer, Bjorkman conducted a search of the passenger compartment of Hurley's vehicle and recovered approximately 4 ounces of methamphetamine.

Given all of the information known to officers at the time, there was probable cause to conduct a warrantless search of this vehicle pursuant to the automobile exception.  Defendant's motion should be denied.

Erika Romero Montenegro.  Defendant Montenegro has also moved to suppress evidence of a traffic stop for a purported Fourth Amendment violation.  This motion should also be denied.  The government expects to introduce evidence about the stop through Deputy Kris Peterson of the Douglas County Nebraska Sheriff's Office.  Deputy Peterson is expected to testify that on May 27, 2011, he was on patrol on Interstate 80 in Douglas County, Nebraska, when he saw a vehicle driven by Montenegro driving on the shoulder.  Deputy Peterson will testify that the driver's side tires were completely over the yellow line of the freeway and that the vehicle continued in this manner for several hundred feet.  Deputy Peterson stopped the vehicle and spoke with Montenegro, who admitted that she was tired.  Peterson saw several things that made him believe that Montenegro was involved in transporting drugs or drug proceeds based on his experience and training, including energy drink containers, air fresheners, excessive vehicle mileage, and inconsistent travel information.  Defendant Montenegro provided Peterson with written consent to search the vehicle on a form that was written in English and Spanish.  Peterson located a hidden compartment that contained approximately $160,000.00 United States

Currency.   Approximately $1,350.00 of this money was later determined to be buy fund money used by the DEA to purchase methamphetamine from co-defendant Sanchez-Rodriguez.

The stop of Montenegro's vehicle was valid based on her own driving conduct.  The defendant provided a valid consent to search the vehicle and, even if she hadn't, Deputy Peterson had probable cause to search it based on the indicia of drug trafficking he observed.  The defendant's motion should be denied.

Adelaida Barragan-Sanchez.   Defendant Adelaida Barragan-Sanchez challenges the warrant to search her St. Paul, Minnesota residence that was issued on September 16, 2011.  However, this warrant was valid and issued by a Federal Magistrate after a finding of probable cause.  Probable cause is defined as a "fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983); United States v. LaMorie, 100 F.3d 547, 552 (8th Cir. 1996).  A search must be upheld if the issuing judge had simply "a substantial basis" for finding the existence of probable cause. Gates, 462 U.S. at 239.  Further, considerable deference should be given to the issuing judge's determination of probable cause.  See id. at 236; United States v. Ellison, 793 F.2d 942, 946 (8th Cir. 1986).

Probable cause is determined from the "totality of the circumstances" presented by the application for the search warrant,

see Gates, 462 U.S. at 238, and the affidavits supporting search warrants must be read in a "common sense and realistic fashion." United States v. Ventresca, 380 U.S. 102, 108 (1965); see also United States v. Cadwell, 864 F.2d 71, 74 (8th Cir. 1988).

Even if the search warrants somehow lacked probable cause, they should be upheld because the good-faith exception would apply pursuant to United States v. Leon, 486 U.S. 897 (1984). Here, the agents received a warrant from a United States Federal Magistrate and had no reason to doubt its authenticity or validity.

The affidavit in this case set forth probable cause as to the defendant's residence, detailing the defendant's involvement in drug trafficking. The defendant's motion does not specify any particular claimed deficiency. The United States is prepared to offer the search warrant affidavit to the Court for a four corners review and, absent a stipulation, may offer testimony from the executing officer for the limited purpose of establishing that the warrant was executed in good faith.

Robert Delforin. Defendant Delforin challenges the search that occurred upon his arrest on October 12, 2011. The government intends to introduce a copy of Delforin's arrest warrant authorizing the arrest. In addition, United States Deputy Marshal Nathan Matthews will testify that he arrested Delforin pursuant to the warrant and search him incident to his arrest. Deputy Matthews will testify that Delforin attempted to run twice and physically

resisted arrest.  The items recovered from his person included methamphetamine, a scale, a pipe and nearly $4,000.00 U.S. Currency.

The defendant was arrested pursuant to a valid warrant and his search was incident to that arrest.  It is well-settled that a search of an defendant's person pursuant to a lawful arrest is a traditional exception to the warrant requirement of the Fourth Amendment.  <u>United States v. Robinson</u>, 414 U.S. 218, 224 (1973).  <u>Arizona v. Gant</u>, __ U.S. __, ----, 129 S.Ct. 1710, 1716, 173 L.Ed.2d 485 (2009)( "Among the exceptions to the warrant requirement is a search incident to a lawful arrest.") "A search incident to arrest may lawfully extend to 'the arrestee's person and the area within his immediate control.' " <u>United States v. Perdoma</u>, 621 F.3d 745, 750 (8th Cir.2010), cert. denied, __ U.S. __, 131 S.Ct. 2446, __ L.Ed.2d __, 2011 WL 500051 (May 16, 2011).  Defendant's motion to suppress should be denied.

## 16.  <u>Motion for Bill of Particulars</u>

**[308]**

Defendant seeks a Bill of Particulars, alleging that she is unable to ascertain from the face of the indictment the nature of the case against her.  A Bill of Particulars is intended to permit a defendant "to identify with sufficient particularity the nature of the charge pending against him, thereby enabling the defendant to prepare for trial, to prevent surprise, and to interpose a plea

24

of double jeopardy should he be prosecuted a second time for the same offense." United States v. Bortnovsky, 820 F.2d 572, 574 (2nd Cir. 1987); see also, United States v. Arenal, 768 F.2d 263, 268 (8th Cir. 1985); United States v. Miller, 543 F.2d 1221, 1224 (8th Cir. 1976).  Double jeopardy is not an issue here because defendant has no prior convictions.

A Bill of Particulars is not designed to provide information that is helpful to the defense or is it designed to be a substitute for discovery.  See, United States v. Wessels, 12 F.3d 746, 750 (8th Cir. 1993), citing United States v. Hester, 917 F.2d 1083, 1084 (8th Cir. 1990); United States v. Matlock, 675 F.2d 981, 986 (8th Cir. 1982) ("Acquisition of evidentiary detail is not the function of the bill of particulars.")  The purpose of a Bill of Particulars is to inform the defendant of the nature of the charges against him and to prevent or minimize the any surprise at trial. United States v. Matlock, at 986, (internal citations omitted). The Bill should not issue where the specifics requested by the defendants are readily available elsewhere.  See, United States v. Bortnovsky, at 574.  The Court should be aware that the defendant has been provided with hundreds of pages of discovery documents, including the early disclosure of some, but not all, Jenck's act statements.

A grand jury's indictment is legally sufficient on its face if it contains all of the essential elements of the offense charged,

fairly informs the defendant of the charges against which he must defend, and alleges sufficient details to allow a defendant to plead double jeopardy as a bar to a successive prosecution for the same conduct. United States v. Wessels, 12 F.3d 746, 750 (8th Cir. 1993). An indictment that tracks the language of the charging statute is generally sufficient under the above criteria, assuming the statute itself is clear. Hamling v. United States, 418 U.S. 87, 117 (1974); United States v. Nabors, 45 F.3d 238, 239-240 (8th Cir. 1995). Here, the grand jury indictment alleges that the defendant was a member of a conspiracy to distribute and possess with intent to distribute cocaine from 2005 until 2007. The indictment follows the language of the statute under which defendant was charged and is sufficient on its face.

The Indictment sets forth the crimes the defendant has committed, the dates, the purpose of the crimes and the statutes violated. In addition, the documents and other discovery items which have been provided to the defendant, sufficient notice is given to the defendant to elucidate the offenses charged. "The purpose of a bill of particulars is to inform the defendant of the nature of the charges against him and to prevent or minimize the element of surprise at trial." United States v. Maull, 806 F.2d 1340, 1345 (8th Cir. 1986) (quoting United States v. Miller, 543 F.2d 1221, 1224 (8th Cir. 1976)).

When read carefully, it is apparent that the defendants are actually seeking a theory of the government's case, but under the law, the government is not required to provide its arguments in favor of guilt to the defendants prior to trial.  The government is not required to disclose the precise manner in which the crimes alleged in the indictment were committed or how the government intends to prove such charges.  See, e.g., United States v. Abrams, 543 F.Supp. 1184, 1194 (S.D.N.Y. 1982).  Courts repeatedly have denied motions for a bill of particulars seeking the types of information sought by the defendant.  See, e.g., United States v. DiCesare, 765 F.2d 890, 897-98 (9th Cir. 1985) (government need not disclose names of co-conspirators and overt acts not charged in indictment) and cases cited therein; United States v. Kendall, 665 F.2d 126, 134-35 (7th Cir. 1981) (unnamed co-conspirators); United States v. Colson, 662 F.2d 1389, 1391 (11th Cir. 1981)(unnamed co-conspirators); United States v. Climatemp, Inc., 482 F.Supp. 376, 390 (N.D. Ill. 1979) (defendants not entitled to substance of conversations and meetings between co-conspirators), aff'd, 705 F.2d 461 (7th Cir.), cert. denied, 462 U.S. 1134 (1983).

The case law clearly holds that a motion for a Bill of Particulars should be rarely granted.  Here, the Indictment and the discovery, particularly the extensive affidavit in support of the various search warrants executed in this case, taken together provide the defendant with a roadmap for trial.  This is not the

purpose of a Bill of Particulars.  Defendants' requests should be denied.

17.  **Motion Suppress Identifications**

   **[295]**

   Defendant Robert Delflorin's motion to suppress identification procedures should be denied as moot because no eyewitness identification procedures were used to identify the defendant during this investigation.  (See: Doc. 295).


Dated: November 29, 2011          B. TODD JONES
                                  United States Attorney

                                  *s/Steven L. Schleicher*

                                  BY: STEVEN L. SCHLEICHER
                                  Assistant U.S. Attorney
                                  Attorney ID No. 260587